LEO SANOCKI, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.; LEO and BARBARA SANOCKI, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Sanocki v. Commissioner
Docket Nos. 1058-86, 1216-86.
United States Tax Court
T.C. Memo 1989-26; 1989 Tax Ct. Memo LEXIS 25; 56 T.C.M. (CCH) 1088; T.C.M. (RIA) 89026; January 12, 1989. Joyce Rebhun, for petitioners. Gerald W. Douglas, for respondent. SHIELDS
*26 MEMORANDUM OPINION SHIELDS, Judge: In docket No. 1058-86 of these fully stipulated cases respondent determined deficiencies in and additions to Leo Sanocki's income tax for years and in amounts as follows: Additions to Tax
Year
Deficiency
Section 6653(b) [1]
1973
$    39.00
$   472.00
1974
3,886.00
1,943.00
1975
4,707.00
2,354.00
1976
7,548.00
3,774.00
1977
6,608.00
3,304.00
1978
8,121.00
4,061.00
In the alternative respondent determined that if the determination with respect to the additions to tax for fraud under section 6653(b) for any year set forth above is not sustained petitioner Leo Sanocki is liable in such year for the addition to tax for negligence under section 6653(a) and the addition to tax for failing to file a timely income tax return under section 6651(a)(1). In docket No. 1216-86 respondent determined deficiencies in and additions to the income tax of petitioners Leo and Barbara Sanocki for years and in amounts *27 as follows: Additions to Tax
Section
Section
Year
Deficiency
6651(a)(1)
6653(a)
1979
$ 3,704.00
$ 926.00
$ 294.00
1980
2,596.00
649.00
426.00
Additions to Tax
Section
Section
Section
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1981
973.00
$ 1,854.00
$ 438.00
*
After concessions the issues remaining for decision are (1) whether Leo Sanocki (hereinafter referred to as petitioner in the singular) is entitled to a theft loss deduction for community property taken by Gail Sanocki while she was his wife; and (2) whether petitioner is liable for the addition to tax provided by section 6653(b) for having fraudulently and with the intent to evade tax understated his income for each of the years 1973 through 1978. During 1973 petitioner was unemployed. From 1974 through 1978 he was employed as an engineer by Rockwell International. During 1973 through 1978 he was married to Gail Sanocki and they resided in Hawthorne, California. Gail Sanocki was employed during their marriage as a technician at California State University. Petitioner and Gail *28 Sanocki separated in 1976 and were divorced in 1979. In the same year he married Barbara Sanocki. He and Barbara Sanocki were divorced in 1983 but they both still resided in Hawthorne, California, when the petitions were filed herein. In 1973, petitioner attempted to establish a non-traditional church which he called the Objective Reality Associated Church for Liberty and Excellence (ORACLE) as a chapter or congregation of the Universal Life Church. During 1973 through 1978 petitioner transferred all his earnings and property to ORACLE in an attempt to avoid the payment of income taxes even though ORACLE admittedly never qualified as an exempt organization during any of the years in question and the property subject of all such transfers continued to inure to his personal benefit. Petitioner did not file timely income tax returns for the years 1973 through 1978. During each of the years 1976, 1977 and 1978 he filed false W-4 certificates in which he claimed excessive allowances in order to avoid the withholding of income tax from his earnings. In 1981 petitioner was tried and convicted under section 7201 of willfully attempting to evade the payment of income tax for each of *29 the years 1974, 1975, 1976 and 1977. His conviction was affirmed in 1982 and at that time he filed a delinquent return for each of the years 1973 through 1978. On the returns for 1974 through 1978 petitioner claimed theft loss deductions of $ 84,996 in 1974, $ 69,175 in 1975, $ 51,179 in 1976, $ 91,172 in 1977, and $ 67,977 in 1978. All of the deductions were based upon a purported theft in 1977 from petitioner of certain gold coins with loss carrybacks to 1974, 1975 and 1976 and a carry forward to 1978. The gold coins which were the subject of the alleged theft had been purchased by petitioner during his marriage to Gail Sanocki with funds accumulated from wages earned by both of them. The coins constituted community property under California law. Prior to their separation in 1976 the coins were hidden in the couple's home. Upon their separation petitioner moved out of the family home but did not take any of the gold coins with him. However, prior to July of 1977 petitioner removed the coins from the house without Gail Sanocki's knowledge or consent and placed them in the trunk of his car which was also community property of the couple. In July of 1977 Gail Sanocki entered *30 the car without petitioner's consent and removed the gold coins. On his 1977 return petitioner valued the coins at $ 182,543 and claimed 50% of such value as a theft loss. Petitioner has no documentary evidence which tends to establish the number, type, cost, date of purchase or value in 1977 of the coins. However, subsequent to the trial, the parties have stipulated that if we determine that petitioner is entitled to a theft loss with respect to the coins the value of such coins was $ 120,000 and the amount of the theft loss is $ 60,000. Petitioner contends that in 1977 he suffered a theft loss from the misappropriation by Gail Sanocki of his share of the community property represented by the gold coins. Respondent contends petitioner has failed to establish that a theft occurred because the coins were community property and their removal by Gail Sanocki did not constitute a theft. Section 165(c)(3) generally allows the deduction of a loss incurred as the result of theft. However, for purposes of section 165(c)(3), the question of whether a theft occurred in this case is to be determined from the law of California where the loss occurred. Sperzel v. Commissioner,52 T.C. 320, 328 (1969). *31 Section 484(a) of the California Penal Code defines theft as follows: Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him * * * is guilty of theft. In this case the parties agree that all of the gold coins, as well as the car in which petitioner kept them at the time they were removed by Gail Sanocki were community property of petitioner and Gail Sanocki. [2] Consequently we must turn to the community property laws of California in order to determine whether or not her removal of the coins constituted a taking in whole or part of "the personal property of another" under sec. 484(a) of the California Penal Code. We are satisfied it does not because the community property laws vest title of the property equally in each spouse. Cal. Civ. Code, sec. 5105 (West Supp. 1983).[3] Furthermore, each spouse has an equal right to the management and control and hence the possession of community property. Cal. Civ. Code, sec. 5125(a) (West Supp. 1983).[4] Therefore, in 1977 Gail Sanocki had as much right to the management, *32 control and possession of the gold coins as petitioner had. Consequently her removal of the coins from the car does not constitute a theft under California law. See People v. Andary,120 Cal. App.2d 675, 261 P.2d 791 (1970). A similar conclusion has been reached in cases involving joint ownership. See, for example, Browne v. Commissioner,T.C. Memo 1971-128, affd. without opinion 456 F.2d 799 (5th Cir. 1972), cert. denied 409 U.S. 867 (1972), where amounts withdrawn by a husband from a joint bank account did not result in a deductible theft loss because such withdrawal did not constitute a crime under state law. See also Tyler v. Commissioner,13 T.C. 186, 193 (1949), where we concluded that "one who owns goods jointly with another ordinarily has the same right of possession as the co-owner and therefore he cannot commit larceny in respect of such goods." Accordingly, petitioner has failed to establish that he is entitled to the theft loss deductions claimed on his returns for 1974 through 1978. *33 With respect to the fraud issue respondent has the burden of proof. Section 7454(a); Rule 142(b). He can meet the burden by showing with clear and convincing evidence that there is some underpayment of tax in each year and that petitioner engaged in conduct intended to conceal, mislead, or otherwise prevent the collection of taxes known to be owing. Wedvik v. Commissioner,87 T.C. 1458, 1468-1469 (1986). Whether any part of any underpayment of tax is due to fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never imputed or presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Because direct evidence of the taxpayer's intent is rarely available, however, respondent may prove fraud through circumstantial evidence. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). The parties have stipulated that petitioner used ORACLE to avoid the payment of income taxes during the years 1973 through 1978; that he did not file income tax returns for 1973 through *34 1978 until 1982; that he filed false Forms W-4 claiming excessive withholding allowances for each of the years 1976, 1977 and 1978; and that he was tried and convicted of willfully attempting to evade the payment of income taxes for each of the years 1974 through 1977. In view of his conviction with respect to 1974 through 1977 petitioner is collaterally estopped from contending that he is not liable for the additions to tax for fraud provided by section 6653(b) for such years. Gray v. Commissioner,708 F.2d 243 (6th Cir. 1983), cert. denied 466 U.S. 927 (1984). Furthermore we are convinced that his entire course of conduct clearly evinces an intent commencing in 1973 and continuing through 1978 to fraudulently evade the collection of taxes known by him to be due for each of the years under consideration. Consequently, respondent's determination that the additions to tax for fraud under section 6653(b) are due is sustained. To reflect the foregoing as well as the concessions of the parties Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended an in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest due on $ 973.00↩
2. We have considered petitioner's argument on brief that the coins had been the subject of a transmutation into separate property. However, we can attribute no weight to such argument not only because no authority is cited but also because it is directly contrary to the stipulation of the parties. ↩
3. Cal. Civ. Code, sec. 5105 (West Supp. 1983) reads as follows: The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests. This section shall be construed as defining the respective interests and rights of husband and wife in community property. ↩
4. For the years in question and in relevant part, Cal. Civ. Code, sec. 5125(a) (West Supp. 1983) reads as follows: (a) * * * either spouse has the management and control of the community personal property, whether acquired prior to or on or after January 1, 1975, with like absolute power of disposition, other than testamentary, as the spouse has of the separate estate of the spouse.↩